UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
ROBERT VIDAL and                                :
HOLGER OCANA,
                                                :
        Plaintiffs,
                                                :
        vs.                                            No. 3:12cv0248(MPS)(WIG)
                                                :
METRO-NORTH COMMUTER RAILWAY
COMPANY,                                        :

        Defendant.                              :
-----------------------------------------------------------X
```

RULING ON DEFENDANT'S OBJECTIONS
TO PLAINTIFFS' REQUEST FOR PRODUCTION

Plaintiffs, Robert Vidal and Holger Ocana, have bought this employment discrimination suit against their employer, Metro-North Commuter Railway Company, alleging that Defendant discriminated against them on the basis of their national origin, ethnicity, and color, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, in denying their applications to Defendant's Foreman In Training ("FIT") Program. Now pending before the Court are Plaintiffs' challenges to 47 of the 52 designations of privilege by Defendant on its privilege log, produced in response to Request No. 8 in Plaintiffs' Third Request for the Production of Documents.

Background

In Request No. 8, Plaintiffs requested Defendant to produce: "All documents, whether in writing or electronic form, including but not limited to correspondence, internal memoranda, equal opportunity policies, workforce diversity policies, affirmative action programs, drafts and

1


training programs, concerning any consulting services provided to defendant by all outside consultants from 2003 to 2006."  Initially, Defendant objected to this request on the ground that it was overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objected on the ground that it sought documents protected from disclosure by the attorney-client privilege and/or work-product doctrine.  In a supplemental response, Defendant reiterated its objections but produced certain documents pertaining to the retention of a consultant in connection with the non-monetary portion of Defendant's settlement of a prior Class Action lawsuit, as well as a copy of his report.  Pursuant to an earlier Court order, Defendant also produced a privilege log setting forth 52 documents which it claimed were protected from disclosure by the attorney-client privilege or the work-product doctrine.  Plaintiffs have challenged 47 of the 52 privilege claims.

Some factual background is necessary to an understanding of the issues presented.  Following resolution of the Class Action,[1] as required by the settlement agreement, Metro-North retained Samuel Estreicher, Esq., in April 2003 as a consultant to provide advice concerning Metro-North's human resources policies.  The Settlement Agreement and Request for Proposal provided that the consultant would review Metro-North's policies and make written

---

[1] The Class Action arose out of two lawsuits, *Robinson et al. v. Metro-North Commuter Railroad Co.*, and *Norris, et al. v. Metro-North Commuter Railroad Co.*, filed in 1994 and 1995, respectively, in the U.S. District Court for the Southern District of New York.  According to Mr. Estreicher's report, discussed *infra*, they alleged, *inter alia*, claims of race discrimination in promotions and discipline.  "In sum, they contended that African-American employees were significantly less likely than Caucasian employees to be promoted, and African-American employees were disciplined significantly more often than Caucasian employees."  (Estreicher Report at 3).  The cases were consolidated and a class certified consisting of African American/Black employees actively employed by Metro-North at any time during the period from January 1, 1985, to June 30, 2002.  (*Id.* at 4).

recommendations with respect to the following: recruitment, hiring, training programs, job posting, discipline, and EEO policy statement.  The work consisted of three phases: information and data gathering, submission of the written report, and, if required, providing assistance in implementation.  Additionally, as part of the settlement of these two lawsuits, Metro-North was required to establish a Human Resources Review Committee ("HRRC") to review Metro-North's hiring and promotion processes and its disciplinary processes.

Between 2003 and 2005, Estreicher provided Metro-North with various drafts of his report, to which  Metro-North's Deputy General Counsel, Carol Sue Barnett, issued comments and a response, and solicited comments from the General Counsel, the head of Human Resources, and various members of the HRRC.  Defendant has asserted an attorney-client privilege and/or claim of work-product as to all of the drafts of Estreicher's Report, as well as the comments and responses.

Additionally, during this time period the HRRC was meeting on a regular basis to review the hiring, promotion, and disciplinary practices of Metro-North.  The HRRC consisted of the Vice President of Human Resources and Diversity, the Director of Workplace Diversity, the Director of Labor Relations, the Director of Human Resources, and management employees from three major operations of transportation service departments.  Generally, Barnett and Estreicher, and occasionally another attorney from Estreicher's law firm, were in attendance.  Defendant has refused to produce the actual minutes of these meetings and the draft minutes of these meetings again based upon attorney-client privilege and/or the work-product doctrine.

In October 2005, Estreicher issued his report, which set forth an initial set of recommendations concerning Metro-North's employment practices, "[b]ased on a careful review

of relevant pleadings and other materials presented in the consolidated Class Action, the Company's written employment policies, interviews with senior management officials at Metro-North, regular attendance at meetings of the Committee [the HRRC], consultation with Class Counsel and his expert at a specially scheduled meeting, review of arbitration awards rendered pursuant to the Stipulation and ongoing discussions with the Committee, and *without any suggestion that these steps are legally required.*" (*Id.* at 5-6) (emphasis added). As noted above, this report has been produced to Plaintiffs' counsel in this litigation and also to Class Counsel in the Class Action.

## Discussion

The 47 documents that have been submitted to the Court for its *in camera* review have been categorized by Defendant as follows:

(1) 10 documents that are communications between Estreicher and Barnett;

(2) 14 documents that are internal correspondence between Barnett and Metro-North's legal or human resources personnel pertaining to Estreicher's consultancy and the execution of the terms of the Stipulation of Settlement;

(3) 18 documents that are draft minutes or minutes of the HRRC; and

(4) 5 documents that are are draft responses, comments or notes regarding Estreicher's report and Metro-North's response created by Barnett.

I.  Relevance

Initially, Defendant objects to production of these documents on the ground that they are not relevant to the instant lawsuit. The Federal Rules establish a broad scope of permissible discovery. *See Marchello v. Chase Manhattan Auto Fin. Corp.*, 219 F.R.D. 217, 218 (D. Conn.

2004). Rule 26(b)(1), Fed. R. Civ. P., provides in relevant part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In this case, Plaintiffs have asserted disparate impact claims based upon Defendant's failure to promote them into the FIT Program in 2006. The Class Action also involved claims of discrimination in promotions. Moreover, Defendant has asserted as an affirmative defense, *inter alia*, that Plaintiffs' complaint is barred because Defendant maintained a policy prohibiting discrimination, a procedure for the resolution of discrimination complaints, and Defendant exercised reasonable care to prevent and correct any discriminatory conduct. By raising this affirmative defense concerning its internal policies to prevent and resolve claims of discrimination, Defendant has placed its policies concerning discrimination at issue. Estreicher's final report was issued in late 2005. Plaintiffs allege a failure to promote in 2006. The Court finds that, in general, the documents withheld are relevant, as that term is defined by Rule 26(b)(1), Fed. R. Civ. P., to the claims asserted in this case[2] and overrules Defendant's objection.[3]

The Court, however, has ordered the redaction of certain sections of the documents where the information is totally irrelevant to this case. These redactions primarily concern sensitive and personal information about other Metro-North employees that has absolutely no bearing on this

---

[2] In fact, several of the documents (Docs. 15, 16) discusses the FIT Program.

[3] The Court appreciates Plaintiffs' arguments concerning Defendant's boilerplate objections. However, having found that the documents are relevant, the Court need not address this argument except to the extent it pertains to Plaintiffs' request for attorney's fees.

case.

## II.  The "Consulting Expert" Rule

Defendant next invokes what is commonly referred to as the "consulting expert" rule described in Rule 26(b)(4)(D), Fed. R. Civ. P., pertaining to "experts employed only for trial preparation," *i.e.*, an expert "who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Estreicher was retained after the Class Action was settled and judgment entered.   He was not retained in anticipation of this litigation or to prepare for the trial of this action.  Additionally, Defendant has already produced his report, which generally waives the protections afforded a non-testifying expert by Rule 26(b)(4)(D), Fed. R. Civ. P.  *See Agron v. Trustees of Columbia Univ.*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997).  Thus, the Court overrules Defendant's objection based upon the "consulting expert" rule.

## III.  The Attorney-Client Privilege/Work-Product Doctrine

Defendant also claims that most of the documents listed in its privilege log are protected from disclosure based upon the attorney-client privilege and under the work-product doctrine. The burden is on Defendant, as the party invoking these privileges, to demonstrate their applicability.  *Smith v. Conway Org., Inc.*, 154 F.R.D. 73, 77 (S.D.N.Y. 1994).  Where the district court's subject matter jurisdiction is based on a federal question, privilege issues are governed by federal common law.  Fed. R. Evid. 501; *Asuncion v. Metropolitan Life Ins. Co.*, 493 F. Supp. 2d 716, 720 (S.D.N.Y. 2007).

### A.  Work-Product Doctrine

To invoke the protection of the work-product doctrine, the party must show that the

documents were prepared principally or exclusively to assist in anticipated or ongoing litigation. *See* Rule 26(b)(3)(A), Fed. R. Civ. P. ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . .)."); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927 (1996). If the party asserting a work-product privilege meets its burden, then the burden shifts to the requesting party to show that the party cannot, without undue hardship, obtain the substantial equivalent of the documents requested. Rule 26(b)(3)(A), Fed. R. Civ. P. The difficulty the Court has with Defendant's invocation of the work-product doctrine is that none of the documents at issue was prepared in anticipation of litigation or to assist in ongoing litigation. *See Resnick v. American Dental Ass'n.* 95 F.R.D. 372, 375 (N.D. Ill. 1982). Judgment had entered, and these were actions taken to fulfill the non-monetary aspects of the settlement. Defendant has failed to cite any case in which post-judgment documents were protected from disclosure under the work-product doctrine. Thus, the Court holds that the work-product doctrine does not apply.

    B.  Attorney-Client Privilege

    To invoke the attorney-client privilege, a party must show that a confidential communication between client and counsel was made for the purpose of obtaining or providing legal advice. *Constr. Prods. Research*, 73 F.3d at 473. The Second Circuit, in applying this rule, has held that a party invoking the privilege must show: (1) a communication between client and counsel, (2) that was intended to be kept confidential and was in fact kept confidential, and (3) that was made for the purpose of obtaining or providing legal advice. *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). Moreover, the privilege is construed narrowly because it renders

otherwise relevant information undiscoverable. *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Documents that have been produced for the Court's *in camera* review make it very clear that Estreicher, although a lawyer, was not hired to provide legal advice. In the original draft of his report, Estreicher described himself as a "legal advisor." Barnett responded on several occasions that this characterization was incorrect, and she clarified that Estreicher was serving as a consultant to the HRRC to review employment policies. She further noted that Metro-North had not limited the pool of candidates for this assignment to lawyers. (Doc. 37). On another document, Barnett wrote, "[t]he function of the Consultant was to provide assistance to the Committee [HRRC] in evaluating specific issues, and more specifically to provide the Committee the benefit of expertise and experience in the best practices of the industry with respect to its policies regarding recruitment, hiring, training programs, job posting, discipline, and EEO policy statement." (Doc. 30). She noted on another document that they were looking for professional expertise on human resources matters, no legal expertise. (Doc. 10).[4]

Accordingly, no attorney-client privilege is afforded by virtue of Estreicher's status as an attorney. *See North Am. Mortg. Investors v. First Wisc. Nat'l Bank of Milwaukee*, 69 F.R.D. 9, 11 (E.D. Wis. 1975) (holding that possession of a law degree and admission to the bar is not enough to establish the person as an attorney for purposes of determining whether the attorney-client privilege applies in a discovery setting. The lawyer must not only be functioning as an

---

[4] Indeed, Barnett wrote, "Mr. Estreicher evidently believes that an attorney-client privilege attaches to his work, yet the Stipulation does not require Metro-North to engage an attorney as its consultant, and it does not contemplate that privileges will attach to the consultant's work." (Doc. 30). She further noted that Metro-North was required to provide the consultant's written recommendations to Class Counsel. (Doc. 30).

advisor, but the advice given must be predominantly legal, as opposed to business, in nature); *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 206, 212 (S.D.N.Y. 1974) (holding that one of the essential elements of the attorney-client privilege is that the attorney is acting as an attorney).

Additionally, the attorney-client privilege does not foreclose inquiry into the general nature of the lawyer's activities on behalf of a client, conditions of the lawyer's employment or any other external trappings of the relationship. The privilege is concerned only with confidential communications, not with the structural framework within which they are uttered. *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480, 483 (E.D. Pa. 1978).

However, the attorney-client privilege may attach to communications to and from Barnett in her role as in-house counsel to Metro-North. With respect to in-house counsel communications, in-house counsel often fulfill dual roles of legal consultant and business advisor. Communications that principally involve the performance of non-legal functions by in-house counsel are not protected. *Gomez v. Metropolitan District*, No. 3:11cv1934, 2013 WL 2489138, at *3 (D. Conn. June 10, 2013 ) (Margolis, M.J.). Therefore, to determine whether the communications are privileged, the Court must determine whether the in-house counsel's performance depended principally on his or her knowledge of and application of legal requirements and principles, rather than his or her expertise in business or commercial matters. *Id.* Factors that were considered in *Gomez* were whether the in-house counsel alluded to legal principles or engaged in a legal analysis, or whether the communication was a collection of facts to determine the course of action to be taken. Even if a business decision can be viewed as containing both business and legal evaluations, the business aspects of the decision are not protected simply because legal considerations were also involved. *Complex Sys., Inc. v. ABN*

9

*AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011); *see also Ovesen v. Mitsubishi Heavy Inds., of Am. Inc.*, No. 04 Civ. 2849, 2009 WL 195853, at **2-4 (S.D.N.Y. Jan. 23 2009) (same, where VP/general counsel drafted memo to safety review committee to reduce accident rate, and only one paragraph contained legal advice and could be redacted).

A document also is not privileged merely because it was sent to or received by an attorney and the client. The document must contain confidential communications regarding legal advice. *Buxbaum v. St. Vincent's Health Servs., Inc.*, No. 3:12cv117, 2013 WL 74733, at *5 (D. Conn. Jan. 7, 2013) (Fitzsimmons, M.J.). Further, "[a] document will not become privileged simply because an attorney recommended its preparation if it contain merely business-related or technical communications between corporate employees." *In Re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006). Documents made at the request of in-house counsel that contain merely business communications are not privileged. *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052, 2008 WL 4067437, at *11 (S.D.N.Y. Aug. 28, 2008), *modified on reconsideration by* 2009 WL 1953039 (S.D.N.Y. July 8, 2009).

Additionally, the fact that a document was reviewed by legal counsel does not convert it into a privileged document. In *Hurst v. F.W. Woolworth Co.*, No. 95 Civ. 6584, 1997 WL 104965, at *2 (S.D.N.Y. Mar. 7, 1997) (Haight, D.J.), for example, a document prepared by the Vice President of Human Resources in connection with a reduction-in-force, which was to be later to be reviewed by counsel, was not privileged. It was prepared for business reasons. The later review by counsel did not convert a business document into a privileged communication. Similarly, in *Suboh v. Bellsouth Bus. Sys., Inc.*, No. 1:03CV996, 2004 WL 5550100, at *9 (N.D. Ga. Nov. 17, 2004), the Human Resources Director's analysis of the age and gender of

individuals discharged in a reduction-in-force, which was at issue in the litigation, was not subject to the attorney-client privilege, even though it was prepared at the behest of counsel.  The court noted that the privilege extends to communications with counsel, but not to the underlying facts.  Thus, the Human Resources Director was required to testify to the underlying data before and after the RIF, but she did not have to answer questions about communications with in-house counsel, or what specific information she was requested to compile, how the information was to be organized, or anything that might reveal counsel's thought processes.

Other cases have considered whether draft documents in an attorney's file are protected by the attorney-client privilege.  The initial consideration is whether the document contains largely factual information or whether it provides or seeks legal advice of a confidential nature.  Assuming the latter, draft documents have been held to retain their privilege it they contain information a client considered but decided not to include in the final version.  *Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 161 (S.D.N.Y. 2004).  However, if the changes reflected on the draft documents appear to be stylistic and structural changes only, and do not provide or request legal advice, the documents are not privileged.  *AIU Ins. Co.,* 2008 WL 4067437, at *10.

Where the client is a corporation or organization, the prevailing rule is that the attorney-client privilege extends to communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the corporation in relation to the subject matter of the communication.  *Falcone v. Internal Revenue Service*, 479 F. Supp. 985, 989 (E.D. Mich. 1979).

Moreover, minutes of meetings attended by an attorney or directed by an attorney are not

11

automatically privileged as a result of the attorney's presence. The question is whether the document in question reveals the substance of a confidential attorney-client communication or whether the document is essentially a business communication. *See Scanlon v. Bricklayers and Allied Craftworkers, Local No. 3*, 242 F.R.D. 238, 245 (W.D.N.Y. 2007). Likewise, drafts of minutes of meetings of a corporation's board of directors were held not protected from discovery by the attorney-client privilege, where the corporation failed to establish that the document pertained to any request for legal advice from the corporation's attorneys. *See Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 178 (S.D. Ohio 1993).

With these principles in mind, the Court has carefully reviewed the 47 documents produced by Defendant. Despite the fact that most of the documents are labeled as "ATTORNEY-CLIENT AND WORK PRODUCT - PRIVILEGED COMMUNICATION," the Court finds that few of the documents are privileged.

> (1) Communications between Estreicher and Barnett (Docs. 1, 2, 5, 10, 33, 34, 37, 38, 42, and 43)

Document 1 is Morgan Lewis's (Estreicher's law firm at the time) proposal for Human Resources Consulting Services Project. This document was not prepared for the purpose of providing legal advice, and therefore is not privileged. Additionally, the Retainer Agreement with Morgan Lewis has already been produced, which would have waived any privilege that might have attached. It must be produced.

Documents 2 and 5 are correspondence from Estreicher to Barnett setting forth a list of documents he wants to review. These documents were sought for the purpose of providing advice on human resources issues, not legal advice. The letters must be produced.

Document 10 is a letter dated April 27, 2004, from Estreicher to Barnett enclosing a copy of his first preliminary report. No legal advice is provided in the letter and the letter itself must be produced. The document also contains hand-written commentary from Barnett, most of which is factual and not legal advice. However, there is one notation that should be redacted - starting with the "?" after "rr" down to "compl" just before "formal." As for the draft report, as the discussion above makes clear, it was a human resources document and not a legal analysis. Most of Barnett's notations on the report are grammatical or factual and need not be redacted. However, her hand-written notations on pages 25 and 28 of the draft report are of a legal nature and should be redacted.

Document 33 is a cover letter from Barnett to Estreicher enclosing their draft responses, including those of Mr. Bernard, Vice President and General Counsel, but noting that Mr. Bradley, head of Human Resources, has not yet reviewed it. The letter should be produced. Additionally, the response to Estreicher's report should be produced as it does not contain legal advice or a legal evaluation but, instead, sets forth facts and reflects in-house counsel and other responders' knowledge and expertise in personnel matters.

Document 34 is Estreicher's draft report addressing the suggested changes. It should be produced. Again, Estreicher was not providing legal advice.

Document 37 is a cover memorandum from Barnett to Estreicher attaching Metro-North's response to his recommendations. Both the cover memorandum and responses to his report should be produced for the same reasons as with Document 35. The last page of handwritten notes from Barnett should be redacted.

Document 38 is a cover letter from Estreicher to Barnett with his final draft of the

13

recommendations. Estreicher's cover letter should be produced with Barnett's hand-written notes redacted. Additionally the red-lined report should be produced with the following redactions of Barnett's hand-written notes: page 3, redact note about "A.S."; page 5, redact note about "A.S."; page 6, redact note at bottom right-hand corner; page 15, redact note in bottom right-hand corner; and page 17, redact all hand-written notes except "a further appeal to Bd" at the top of the page.

Document 42 is a facsimile cover letter from Estreicher to Barnett with the next set of revisions to his report. This contains no legal advice and no comments from Barnett or any other in-house counsel and should be produced in full.

Document 44 is a cover letter from Jones Day with the final report, which has already been produced, and a final red-lined copy. This should be produced in full.

> (2) Internal Correspondence Between Barnett and Metro-North's Legal or Human Resources Personnel Re. Estreicher's Consultancy and Execution of the Stipulation of Settlement (Bates No. 1399, 1400; Docs. 18, 19, 22, 30, 35, 36, 39, 40, 41, 45, 46, and 48)

Bates Nos. 1399 and 1400 are emails from Barnett to Marya Gromley-O'Connor regarding the Workplace Diversity's 2006 Annual Policy Statements and her response. It is not clear whether Gromley-O'Connor is in the Legal Department at Metro-North, but even assuming that she is, these transmittal emails with nothing attached and containing no legal advice or request for legal advice is not privileged and should be produced.

Document 18 is a memorandum from Barnett to the HRRC attaching Estreicher's Preliminary Report. For the reasons discussed above regarding Document 10, his report and the cover memorandum are not privileged and should be produced. The hand-written annotations,

which appear to have been made by General Counsel Bradley, do not contain any legal advice and need not be redacted.

Document 19 is the HRRC Preliminary Report Exceptions submitted by Tom Valentine, with some hand-written notes of Barnett attached. The document is largely factual in nature. The only redactions that need to be made are the first two sentences in paragraph 4 on the first page (from "The Railway" to "bargaining.") and on page 6, containing Barnett's notes, the last 4 lines on that page (from "Loose" to "absences.").

Document 22 is the HRRC's Response to the Consultant's Draft Report, which was distributed by Barnett to 13 Metro-North employees (presumably most of which were on the HRRC or in the Legal Department). This document should be produced with the following redaction: on the first page of the Errata Sheet (page 3 of the document), the last sentence under "I. Scope of the Project" should be redacted (from "The likelihood" to "below."); the sentence in bold on page 3 of the Errata Sheet (page 5 of the document) (from "We will need" to "discrimination.").

Document 31 is the HRRC's Response to the Consultant's Draft Report. As with Document 22, this response should be produced with the following redactions: page 1 of the Analysis, paragraph 2, two sentences from "We did not expect" to "future." should be redacted.

Document 35 is a copy of Estreicher's July 2005 Report and Response. These documents need to be produced with the following redactions: page 15, the last two sentences of the first full paragraph under Response to Recommendation B-4 (from "No reasonably" to "little weight."); Response to Recommendation B-5 on page 16.

Document 36 is another draft response to Estreicher's Draft Report. It is not clear whose

notations are on the report in addition to those of Barnett. However, none reflect the giving of legal advice. This document should be produced.

Document 39 is a memorandum from Barnett to Bernard and Bradley concerning Estreicher's August 10, 2005 report. This should be produced with the following redactions: page 1, paragraph 3, the third sentence from "I think" to "recommendations" should be redacted.

Document 40 is a memorandum from Barnett to Bernard and Bradley after a meeting with Attorney Schindel. This report primarily presents legal advice and a plan of action based on that advice and is covered by the attorney-client privilege and need not be produced.

Document 41 is a memorandum from Barnett to Bernard and Bradley concerning her meeting with Estreicher and includes a draft of a letter containing strictly legal analysis. This document is protected by the attorney-client privilege and need not be produced.

Document 45 is a "To Do" List, apparently prepared by Barnett in response to Estreicher's Report. This document outlines a plan of action to address the report and should be produced with the following redactions: the third sentence on page 1, from "This is" to "lawsuit."

Document 46 is a summary of the responses to Estreicher's Report. This does not contain any legal analysis and should be produced. It is largely a summary of documents discussed above.

Document 48 is a one page memorandum from Barnett to Bradley regarding HRRC - Consultant's Recommendations. This memorandum does not contain legal advice and should be produced.

> (3) Draft Minutes and Minutes of the HRRC (Docs. 3, 4, 6, 7, 8, 9, 11, 13, 15, 16, 17, 20, 24, 25, 31, 47, 49, and 50)

<u>Documents 3, 4, 6, 15, 16 , 20, 24, 31, 47</u> are Minutes or Draft Minutes of the HRRC meetings.  None of these documents contain legal advice or analysis and should be produced in full.

<u>Document 7</u> is the Draft of the Minutes of the September 15, 2003 HRRC Meeting.  This document should be produced with the second paragraph under section 6 on the last page redacted.

<u>Documents 8 and 9</u> are Minutes of the January 20, 2004 HRRC Meeting.  It contains several sections involving legal advice that should be redacted.  On page 1, the paragraph under section III. should be redacted.  On page 2, the last sentence should be redacted.

<u>Document 11</u> is Draft Minutes dated April 27, 2004.  This document should be produced with the following redactions: page 2, paragraphs 5 and 6 should be redacted.

<u>Document 13</u> is the Minutes of the May 25, 2004 HRRC Meeting.  The document should be produced with the first paragraph under section 4 and section 5 redacted.

<u>Document 17</u> is Draft Minutes of the August 13, 2004 Meeting.  This should be produced with the second paragraph on page 2 under section 5 redacted.

<u>Document 25</u> is Draft Minutes of the March 2, 2005 HRRC Meeting.  This should be produced with section 4 redacted.

<u>Document 49</u> is Minutes of the May 8, 2005 HRRC Meeting.  This document should be produced with the sections 3 and 5 redacted.

<u>Document 50</u> is the Draft Minutes of the October 3, 2006 HRRC Meeting.  This document should be produced with sections 3, 4, and 5 redacted.

<u>(4) Draft Responses, Comments or Notes by Barnett about Estreicher's Report</u>

(Docs. 12, 14, 21, 29, and 32)

Document 12 is a response to Estreicher's initial set of recommendations with hand-written notes, which include no legal analysis or advice. The document should be produced.

Document 14 is a memo to the file from Barnett concerning her major comments to Estreicher's Report. Overall, while this memo contains her personal opinions and observations, most of the memo does not contain any legal analysis. However, the following portions should be redacted: page 1, first full paragraph, redact the text after (4) and (5); page 4, the paragraphs following p.24, n.33, and p.27 should be redacted; page 7, under p. 33-34, ¶ 5 (1), redact the second, third, and fourth sentences, from "Mr. Bradley" to the end of the parenthetical; page 9, under p. 38, ¶ 1, in section (1), redact everything after the work "appropriate," and in section (2), redact the last full sentence from "As" to "proportions?"; page 10, under p. 39, ¶ 4, redact the parenthetical in section (1), and the last sentences in sections (2), (3) and (4); pages 10-11, redact all of the discussion under p. 39-40, ¶ 5 except for the first two sentences (redact from "I'm" to the end of that section); page 11, redact all of the discussion under p. 40, ¶ 7 except the first sentence (redact from "I" to the end).

Document 21 is a red-lined version of the Committee's Response to the initial Estreicher Report. There is no legal analysis or thought processes and this should be produced.

Document 29 is the HRRC analysis and response to the Estreicher report. It does not contain any legal analysis or advice and should be produced.

Document 30 is the HRRC analysis and response to the Estreicher report. It does not contain any legal analysis or advice and should be produced.

<u>Plaintiffs' Request for an Award of Attorney's Fees</u>

In Plaintiffs' response to Defendant's objection to disclosure of the documents discussed above, Plaintiffs request an award of attorney's fees under Rule 37, Fed. R. Civ. P., for "having to respond to a position that is not warranted on the procedural posture of this case or the law concerning waiver." (Pls.' Mem. 4). Rule 37(a)(A), Fed. R. Civ. P., provides that "[i]f the motion is granted - or if the disclosure or requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making th motion, including attorney's fees." The Rule further provides that the court must not order this payment if the opposing party's nondisclosure or objection was substantially justified. Rule 37(a)(5)(A)(ii), Fed. R. Civ. P.

The Court appreciates Plaintiffs' counsel's frustration with Defendant's boilerplate objections, which this Court has repeatedly found do not meet the responding party's burden of showing why discovery should be denied. *See, e.g., Fracasse v. People's United Bank,* No. 3:12cv670, 2013 WL 6017332, at *2 (D. Conn. Nov. 13, 2013). Indeed, even in this very case, Magistrate Judge Fitzsimmons referred to them as a "paradigm of discovery abuse." *Vidal*, 2013 WL 1310504, at *2 (quoting *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 *S.D.N.Y. 2009)). Nevertheless, the Court has two difficulties with awarding attorney's fees in connection with Plaintiffs' response to Defendant's objection. This ruling is not entered on a Rule 37 motion. More importantly, however, the Court sustained Defendant's objections to the production of some of the documents and required numerous redactions of others. Therefore, the Court declines to award fees to Plaintiffs for having to file a response to Defendant's objections to their discovery request. The Court cautions, however, that it will seriously consider the

19

imposition of sanctions if there are further discovery abuses.

<u>Conclusion</u>

Accordingly, as set forth above, the Court upholds in part and overrules in part Defendant's objections [Doc. # 102] to the production of the 47 documents discussed above. The documents shall be produced within 14 days of the date of this Order. The Court denies Plaintiffs' request for attorney's fees [Doc. # 104] .

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" standard set forth in rule 72(a), Fed. R. Civ. P. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this   4th   day of February, 2014, at Bridgeport, Connecticut.


                                           /s/ *William I. Garfinkel*
                                                  WILLIAM I. GARFINKEL
                                               United States Magistrate Judge